[No. 2459. Decided July 2, 1897.]

H. M. Benton, *Respondent*, v. Philip A. Johncox et al., *Appellants.*

WATER COURSES — RIPARIAN RIGHTS — WHEN ATTACH — APPROPRIATION OF WATER.

While the doctrine of prior appropriation of water on the public lands obtains in this state, yet it in no way interferes with the rule of the common law as to the right of a riparian owner to be protected in the use and enjoyment of the water naturally flowing by or over his land, as against subsequent appropriation of the water for irrigation or other purposes.

For the purpose of protection of the riparian rights of a grantee of the government, as against subsequent appropriation of the water flowing over his land, his title relates back to the first act necessary on his part in the proceedings to acquire title.

The act of the territorial legislature of 1873, regulating irrigation and water rights in Yakima county, and providing for appropriation of the water of streams for irrigation is not applicable in cases where riparian rights had attached prior to its passage, as the doctrine of appropriation applies only to public lands.

Appeal from Superior Court, Yakima County.—Hon. Solomon Smith, Judge. Affirmed.

*James B. Reavis,* and *I. P. Englehart,* for appellants.

*D. J. Crowley,* and *Whitson & Parker,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—An action was instituted in the superior court of Yakima county by the plaintiff Benton, a riparian proprietor on the Ahtanum river in said county, to restrain certain of the appellants from diverting the waters of said stream, and conducting the same to, and upon, their lands situated at a distance therefrom, for the purposes of irrigation. Three separate actions were also commenced by other parties seeking similar relief, and, by stipulation of all the parties and an order of the court, all of those causes were consolidated and tried in this action. Many riparian owners became parties by intervention and joined the plaintiffs in claiming the relief sought by them, and the defendants in the several causes were all made defendants in the consolidated case.

The complaint in each case, briefly stated, alleges riparian ownership on the part of the plaintiff, and appropriation of the water and the date thereof, and the use of the water for irrigation, and its diversion by the defendants. Each of the non-riparian land owners alleges ownership of lands, and appropriation and use of the water for irrigation, and date of such appropriation, and the making of valuable improvements on the land. And each party to the action avers that his land, without artificial irrigation, is arid and unproductive, and prays that he may be decreed entitled to a certain specified quantity of water for the purpose of irrigating his premises. The action involves the rights of a multitude of farmers located on the banks of the river as well as those of a great number of non-riparian land owners.

The evidence preserved in the record is exceedingly vo-

luminous, but the facts deduced therefrom, and stated by the court, are so satisfactory to counsel that we have been relieved of the labor of examining it in detail. Of the ninety-one findings of fact made by the court, none of any special importance is disputed by counsel for appellants. The trial court awarded a perpetual injunction restraining each and every of the non-riparian owners of land from diverting, or interfering with, the water of the river. Appellants excepted to the conclusions of law as announced by the court, and to the whole decree as founded on erroneous conclusions of law, and here insist that the rights of all parties should be determined by this court by the application of the doctrine of appropriation, in accordance with the facts found by the superior court. It may be stated generally that the court found from the evidence the date when each party settled upon his land and took the initiatory step in the acquisition of title thereto, as well as the date at which he appropriated the water for agricultural purposes.

While the court recognized the existence, in this state, of the doctrine of prior appropriation, it nevertheless held that the plaintiffs, and plaintiff intervenors, who settled upon their respective lands, and acquired their title thereto by complying with the laws of the United States, and appropriated and used the water of the stream for irrigation and domestic purposes, prior to the diversion by appellants, were entitled to have the stream continue to flow as it naturally flowed, through or by their lands at the time their possessory rights attached. In other words, the court held that the respondents were entitled to the common law rights of riparian proprietors, as against subsequent appropriators of the water, from the date of their occupancy with intent to acquire the title of the government in pursuance of law. And this ruling of the trial court was not

at variance with the rule repeatedly announced by this court, and the territorial supreme court, except upon the question as to the date at which riparian rights become vested' in lawful occupants of public land. That such rights, as well as the right of prior appropriation, have hitherto been recognized in the decisions in this state will be disclosed by an examination of the following cases: *Thorpe v. Tenem Ditch Co.*, 1 Wash. 566 (20 Pac. 588); *Ellis v. Pomeroy Imp. Co.*, 1 Wash. 572 (21 Pac. 27); *Geddis v. Parrish*, 1 Wash. 587 (21 Pac. 314); *Crook v. Hewitt*, 4 Wash. 749 (31 Pac. 28); *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576 (38 Pac. 147); *Isaacs v. Barber*, 10 Wash. 124 (38 Pac. 871, 45 Am. St. Rep. 772).

Nor did the legislature disregard the rights of riparian owners in the general act of 1890, relating to appropriation of water for irrigation. 1 Hill's Code, § 1718, *et seq.*

On the contrary, §§ 1761 and 1774 of that act especially recognize the existence of riparian rights, and we do not see anything in that statute, or the subsequent act of 1891 (Laws 1891, p. 327), evincing an intention on the part of the legislature to disregard such rights. But it is most earnestly insisted, by the learned counsel for appellants, that the common law doctrine touching riparian rights is not applicable to the arid portions of the state, and especially to Yakima county; and this court is now urged to so decide, notwithstanding anything it may heretofore have said to the contrary. The legislature of the Territory of Washington in the year 1863 (Laws 1863, p. 88), enacted that "the common law of England, so far as it is not repugnant to, or inconsistent with, the constitution and laws of the United States and the organic act and laws of Washington territory, shall be the rule of decision in all the courts of this territory." The language of this provision

was changed by the state legislature in 1891 by omitting the words "of England," substituting the word "state" for "territory," and inserting the clause, "nor incompatible with the institutions and condition of society in this state" (Code Proc., § 108); but the meaning remains substantially the same. It thus appears that the common law must be our "rule of decision" unless this case falls within the exceptions specified in the statute. Now, the common law doctrine declaratory of riparian rights, as now generally understood by the courts, is not, in our judgment, inconsistent with the constitution or laws of the United States or of this state. Nor is it incompatible with the condition of society in this state, unless it can be said that the right of an individual to use and enjoy his own property is incompatible with our condition—a proposition to which, we apprehend, no one would assent for a moment. It is held by practically all the better authorities that the right of the riparian owner to the natural flow of the stream by or across his land, in its accustomed channel, is an incident to his estate, and passes by a grant of the land, unless specially reserved. It is not an easement in, or an appurtenance to, the land, but, as Angell says, is as much a part of the soil as the stones scattered over it. Angell, Watercourses, § 5.

"By the common law," says the court in *Lux v. Haggin,* 69 Cal. 255, 390 (10 Pac. 753), "the right of the riparian proprietor to the flow of the stream is inseparably annexed to the soil, and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it. The right in each extends to the natural and usual flow of all the water, unless where the quantity has been diminished as a consequence of the reasonable application of it by other riparian owners, for purposes hereafter to be mentioned,"

and one of the purposes thereafter mentioned was irriga-
tion.

In Washburn on Easements and Servitudes (4th ed.),
pp, 316, 317, the learned author says:

" The right of enjoying this flow, without disturbance
or interruption by any other proprietor, is one *jure naturae*,
and is an incident of property in the land, not an appurte-
nance to it, like the right he has to enjoy the soil itself, in
its natural state, unaffected by the tortious acts of a neigh-
boring land-owner. It is an inseparable incident to the
ownership of land made by an inflexible rule of law an
absolute and fixed right, and can only be lost by grant or
twenty years' adverse possession."

(In this state, by statute, an adverse possession for ten
years would destroy the right.)

And the law on this subject is laid down by Professor
Pomeroy in language equally clear and explicit. He says:

" The use of the stream, and of the water flowing
through it, forms a part of the rights incident to and in-
volved in the ownership of the lands upon its borders. This
is the principal recognized by the common law, and which
should be recognized by any auxiliary legislation. It is,
moreover, a natural law, an inevitable fact, which no legis-
lation can change. Any statute denying this fact simply
attempts an impossibility." Pomeroy, Riparian Rights,
§ 152.

While the doctrine announced by the foregoing author-
ities has never, so far as we are advised, been directly de-
nied, it has been apparently ignored by the courts in some
of the Pacific states and territories on the theory that the
principles and rules of the common law respecting the
rights of private riparian owners were inapplicable to the
condition and necessities of the people of the particular
localities where the causes of action arose. *Coffin v. Left
Hand Ditch Co.*, 6 Colo. 446; *Drake v. Earhart*, 2 Idaho,
716 (23 Pac. 542); *Stowell v. Johnson*, 7 Utah, 215 (26

Pac. 290); *Moyer v. Preston* (44 Pac. 845); *Clough v. Wing* (17 Pac. 453); *Trambley v. Luterman,* 6 N. M. 15 (27 Pac. 312).

But the legslatures of those states and territories have attempted to abolish the common law doctrine relative to private property in water courses and to riparian rights generally (Pomeroy on Riparian Rights, § 106), and the decisions above cited are presumably in accordance with the local statutes, though some of them, it appears, were grounded solely on the assumption that the rules of the common law were inapplicable, by reason of the aridity of the soil and the consequent necessity for extensive irrigation. But how can it be held that that which is an inseparable incident to the ownership of land, in the Atlantic states and the Mississippi valley, is not such an incident in this or any other of the Pacific states, we are unable clearly to comprehend. It certainly can not be true that a difference in climatic conditions or geographical position can operate to deprive one of a right of property vested in him by a well-settled rule of common law. The mere fact that the appellants will not be able to occupy or cultivate their lands as they heretofore have done, unless they can irrigate them with water taken from the Ahtanum river, is no sufficient reason for depriving the respondents, who settled upon that stream in pursuance of the laws of the United States, of the natural rights incident to their more advantageous location. The necessities of one man, or of any number of men, can not justify the taking of another's property without his consent, and without compensation. If it be true, as claimed by appellants, that if the judgment of the court below is affirmed, their lands will again become a barren waste and cease to " blossom as the rose," it is equally true that, if the waters of the river are diverted from its channel,

the premises of the respondents will become unproductive and utterly worthless.

" The aridity of the soil and air being made the test, the greater the aridity the greater the injury done to the riparian proprietors below by the entire diversion of the stream, and the greater the need of the riparian proprietor the stronger the reason for depriving him of the water. It would hardly be a satisfactory reason for depriving riparian lands of all benefit from the flow, that they would thereby become utterly unfit for cultivation or pasturage, while much of the water diverted must necessarily be dissipated." McKINSTRY, J., in *Lux v. Haggin, supra.*

The question of the applicability of the common law in controversies respecting water rights, in the mineral districts of California, was lucidly discussed by Chief Justice SANDERSON in *Hill v. Smith,* 27 Cal., at page 482. With reference to the charge of the trial court, which seemed to be based on an erroneous view of the law with respect to the rights of miners and ditch owners using the water of a stream for mining purposes, the learned chief justice said:

" This is due in a great measure doubtless to the notion, which has become quite prevalent, that the rules of the common law touching water rights have been materially modified in this state upon the theory that they were inapplicable to the conditions found to exist here, and therefore inadequate to a just and fair determination of controversies touching such rights. This notion is without any substantial foundation. The reasons which constitute the groundwork of the common law upon this subject remain undisturbed. The conditions to which we are called upon to apply them are changed, and not the rules themselves. The maxim, *sic utere tuo ut alienum non laedas,* upon which they are grounded, has lost none of its governing force; on the contrary, it remains now, and in the mining regions of this state, as operative a test of the lawful use of water as at any time in the past, or in

any other country. When the law declares that a riparian proprietor is entitled to have the water of a stream flow in its natural channel—*ubi currere solebat*—without diminution or alteration, it does so because its flow imparts fertility to his land, and because water in its pure state is indispensable for domestic uses. But this rule is not applicable to miners and ditch-owners, simply because the conditions upon which it is founded do not exist in their case. They seek the water for a particular purpose, which is not only compatible with its diversion from its natural channel, but more frequently necessitates such diversion, and moreover does not require the water in a pure state in order to insure its reasonable and beneficial use."

In *Atchison v. Peterson*, 20 Wall. 507, the supreme court of the United States stated, as claimed by appellants, that as respects the use of water for mining purposes the doctrines of the common law declaratory of the rights of riparian owners were, at an early day after the discovery of gold, found to be inapplicable, or applicable only in a very limited extent, to the necessities of miners, and inadequate to their protection. That action was brought by parties who were ditch-owners for an injunction to restrain the defendants from carrying on certain mining operations on Ten Mile creek, in Montana, and the question of riparian rights does not seem to have been involved therein. In fact, in the course of the opinion it is observed that " the government being the sole proprietor of all the public lands, whether bordering on streams or otherwise, there was no occasion for the application of the common law doctrine of riparian proprietorship in respect to the waters of those streams," meaning the streams on the public lands, the waters of which were subject to appropriation and use under the customs obtaining among miners.

In *Basey v. Gallagher*, 20 Wall. 670, the question on the merits in the case, as stated by the court, was whether a right to running waters on public land of the United

States for the purposes of irrigation could be acquired by prior appropriation as against parties not having the title of the government; and the court held that it could. But the question of riparian rights was not in the case, and the court said that " neither party has any title from the United States; no question as to the rights of riparian proprietors can therefore arise. It will be time enough to consider those rights when either of the parties has obtained the patent of the government. At present both parties stand upon the same footing; neither can allege that the other is a trespasser against the government, without at the same time invalidating his own claim."

But, in the later case of *Sturr v. Beck*, 133 U. S. 541 (10 Sup. Ct. 350), the question as to the rights of the riparian proprietor, as against an appropriator of the water, did arise and was determined by the court. The facts were that one John Smith settled on a tract of government land in the territory of Dakota in March, 1877, and continued to reside thereon until he sold and conveyed it by warranty deed to one Beck. He made his homestead application, or entry, on March 25, 1879, and his final proof May 10, 1883, and received a patent from the United States. The waters of a certain creek flowed in its natural channel across Smith's homestead, and, in May, 1880, Sturr went upon that homestead, located a water right thereon, and constructed a ditch by which the waters of the creek were diverted to his own land. Beck went into possession under his deed from Smith and in 1886 notified Sturr to cease diverting the water and maintaining the ditch, whereupon Sturr commenced an action to enjoin Beck from interfering with his alleged water right and ditch, and the use of the water of the creek. Sturr claimed the right to divert and use the waters of the stream for the purposes of irrigation by virtue of a prior

appropriation, and Beck defended and asked affirmative
relief on the ground of riparian ownership.  It will thus
be seen that the question there raised was identically the
same as that which is presented for determination here.
In that case it appeared that neither Smith, nor his grantee
Beck, had ever diverted the waters of the creek from the
natural channel prior to the location of the alleged water
right by Sturr, but the court unanimously held that
Smith's patent related back to the date of his homestead
filing, and cut off completely the alleged claim of Sturr.
The learned chief justice, in delivering the opinion of the
court, after referring to the act of congress of July 26,
1866 (Rev. St., § 2339), and the amendatory act of 1870,
and quoting from the opinion in *Atchison v. Peterson*,
*supra*, said:

"When, however, the government ceases to be the sole
proprietor, the right of the riparian owner attaches, and
cannot be subsequently invaded.  As the riparian owner
has the right to have the water flow *ut currere solebat*, un-
diminished except by reasonable consumption of upper
proprietors, and no subsequent attempt to take the water
only can override the prior appropriation of both land and
water, it would seem reasonable that lawful riparian oc-
cupancy with intent to appropriate the land should have
the same effect."

And, after quoting certain sections of the civil code of
Dakota, and setting out the local custom of diverting and
appropriating the waters of flowing streams for the pur-
pose of irrigation, he concluded the opinion in the follow-
ing language:

"The question is not as to the extent of Smith's inter-
est in the homestead as against the government, but
whether as against Sturr his lawful occupancy under set-
tlement and entry was not a prior appropriation which
Sturr could not displace.  We have no doubt it was, and

agree with the brief and comprehensive opinion of the supreme court to that effect."

It seems to us that the soundness of that decision can scarcely be doubted. While the court fully recognized the doctrine of prior appropriation of water on the public lands, in accordance with the local customs, laws and decisions of courts, it announced and established the just and equitable rule that the riparian rights of a patentee of the government attach, by relation, at the very inception of his title, and will be protected as against subsequent appropriation of the water naturally flowing over the land. That case, it would seem, settles the law adversely to the contention of the appellants in this case. The doctrine that the rights of a patentee or grantee of the government relate back to the first act of the settler necessary in the proceedings to acquire title is also announced in the following cases: *Shepley v. Cowan*, 91 U. S. 330; *Larsen v. Oregon Ry. & Nav. Co.*, 19 Ore. 240 (23 Pac. 974); *Faull v. Cooke*, 19 Ore. 455 (26 Pac. 662, 20 Am. St. Rep. 836). See, also, Kinney, Irrigation, § 210; *Union M. & M. Co. v. Dangberg*, 2 Sawy. 450

The trial court in this case followed the rule laid down in the case of *Sturr v. Beck*, and other cases above referred to, and in so doing, we think, committed no error. But it is claimed by appellants that the act of the territorial legislature entitled "An act regulating irrigation and water rights in the county of Yakima, Washington Territory" (Laws 1873, p. 520), fully authorized them to divert and use the waters of the Ahtanum river as they had done. It is, perhaps, sufficient to say, with reference to that act, that the rights of many of the respondents who own riparian lands had attached, under the law as announced in the Sturr case, prior to its passage and were, therefore, in no wise affected by it. And besides, by the

first section of that act the respondents were entitled to the use of the water for the purpose of irrigating their lands "to the full extent of the soil thereof." Moreover, the doctrine of appropriation applies only to public lands, and when such lands cease to be public and become private property, it is no longer applicable. Gould, Waters, § 240; Pomeroy, Riparian Rights, § 30; *Curtis v. La Grande Water Co.*, 20 Ore. 34 (23 Pac. 808).

It was for the purpose of protecting the rights of appropriators of water for beneficial uses on the public lands which had vested and accrued, by virtue of local customs, laws and decisions of the courts, that the ninth section of the act of congress of July 26, 1866, the substance of which is included in § 2339 of the Revised Statutes, was enacted. It was apparent to congress, and indeed to every one, that neither local customs nor state laws or decisions of state courts, could vest the title to public land or water in private individuals without the sanction of the owner, viz.: the United States. The government being the sole proprietor had the right to permit the water to be taken and diverted from its riparian lands, but when it disposed of land without reserving the water, the latter passed to its grantee free from interference thereafter by the grantor.

"The object of the section [Rev. St., § 2339] was to give the sanction of the United States, the proprietor of the lands, to possessory rights, which had previously rested solely upon the local customs, laws and decisions of the courts, and to prevent such rights from being lost on a sale of the lands." *Jennison v. Kirk*, 98 U. S. 456, 457.

It is suggested on behalf of the appellants that the use of water for irrigation was practically unknown to the common law. But, while it may be true that it is seldom necessary or desirable to irrigate land in England by artificial means, yet it appears that a reasonable use of run-

19—17 WASH.

ning streams for that purpose by riparian proprietors is recognized by the courts of that country. It is expressly so stated in Gould on Waters, § 217, where a number of English cases are cited; and in Pomeroy on Riparian Rights, § 125, it is declared that the common law rule that every riparian proprietor has an equal right to the use of water as it is accustomed to flow, without diminution or alteration, is subject to the well recognized limitation that each owner may make a reasonable use of the water for domestic, agricultural and manufacturing purposes; and the author there cites several English and many American decisions in support of that declaration.

See, also, 2 Washburn, Real Property (5th ed.), pp. 367, 368; Gould, Waters, § 205; *Lux v. Haggin, supra,* and cases cited; *Union M. & M. Co. v. Ferris,* 2 Sawy. 177.

A careful consideration of all the questions raised on this appeal discloses no error, and the judgment is therefore affirmed.

Scott, C. J., and Gordon, J., concur.

Dunbar and Reavis, JJ., not sitting, being disqualified.