[No. 8651.   Department One.   July 13, 1910.]

A. H. AVERY et al., Appellants, v. LORITZ JOHNSON et al.,
Respondents.[1]

WATERS AND WATER COURSES—APPROPRIATION—INDIAN RESERVA-
TIONS—SETTLEMENT. No right to appropriate the waters of a creek
for irrigation within an Indian reservation could antedate the open-
ing of the reservation to settlement, nor could it antedate actual
bona fide settlement upon contiguous lands capable of being irrigated
thereby.

SAME—BONA FIDE SETTLEMENT. A speculating squatter on relin-
quished government land, who made no entry on his own behalf
during two years, is not a bona fide settler and is not entitled to ap-
propriate waters for irrigation.

SAME—PRIORITY. Where the first appropriator of water on public
land has perfected his title, and proceeded with reasonable diligence
in extending his cultivated area, he is entitled to the quantity of
water needed to irrigate his land to the exclusion of subsequent
appropriators or riparian owners.

Appeal from a judgment of the superior court for Okanog-
an county, Taylor, J., entered November 15, 1909, upon
findings in favor of the defendants, after a trial on the merits
before the court without a jury, in an action to enjoin the
use of the waters of a creek for irrigation purposes.  Re-
versed.

Alvin W. Barry, for appellants.
E. Fitzgerald, for respondents.

CHADWICK, J.—The south half of the Colville Indian reser-
vation was opened to settlement on October 10, 1900.   At
that time one Georgie A. Warren made homestead entry of a
certain one hundred and sixty-acre tract of land riparian to
Antoine creek, a small stream flowing from the northeast
into the Okanogan river.   At about the same time, C. C.
Kloppenstein made homestead entry of a one hundred and

[1]Reported in 109 Pac. 1028.

sixty-acre tract lying east of the Warren entry. The lands in their natural state were semi-arid and incapable of producing crops without irrigation, but with irrigation the lands were capable of producing fruit, hay, and like products in great abundance. The plaintiffs Fruit succeeded to the rights of Warren, and plaintiff Avery to the rights of Kloppenstein. Both of the original entrymen and their successors, these plaintiffs, began and have continued with reasonable diligence to irrigate their lands, and they have from year to year increased the cultivated and irrigated area, so that there are now on the Warren entry about one hundred and fifteen acres in cultivation, and on the Kloppenstein tract about fifty-four acres, put to profitable uses by irrigation from the waters of Antoine creek. The full flow of the creek does not exceed three and one-half cubic feet per second from June to September, and in the extreme dry season does not exceed two and one-half feet, and it is shown, we think, by the testimony of both sides, that this is not more than enough to successfully irrigate the lands of the plaintiffs. In 1901 George Rice made homestead entry of one hundred and sixty acres above the Kloppenstein lands. He cleaned out an old irrigation ditch, which had been used by some squatter or squaw man prior to the time the reservation was opened, but did not put the water to any beneficial use. In 1902 Rice relinquished to one Crosby. Crosby never made any entry of the lands, being content, so far as the record shows, to remain a squatter until he could dispose of his "right," which he did in the fall of 1904 to the defendants, who made settlement in November of that year, and have since complied with the homestead laws and now own the land. The testimony differs as to the amount of land irrigated by defendants. They say about twenty acres in 1905, and increasing until at the present time the irrigated tract runs from thirty-five to forty acres; while the plaintiffs' evidence would indicate that the present irrigated area does not exceed twenty-three acres, including seven or eight acres on some "scrip" land lying fur-

ther up the creek. The court made a decree, dividing the use of the waters of the creek between all the parties, and plaintiffs have appealed.

The court found, and we think properly, that no right of appropriation in any of the parties could antedate the opening of the reservation to settlement; and for the same reasons it would follow that no right could antedate an actual *bona fide* settlement upon contiguous lands, capable of being irrigated by the waters of the stream. Hence, no rights would attach to respondents' land by reason of the fact that a squatter or squaw man took out ditches some years before the reservation was opened, and none could attach by reason of Rice's homestead entry, or, if they did, they were lost by Crosby who, although he put in a small garden, had no right or title, present or prospective, to the land. If a party seeks to claim water for irrigating agricultural land by appropriation, he must own the land sought to be irrigated, or be an actual *bona fide* settler having a possessory interest. There must be evidence of an intent to acquire title. The right of a squatter or speculator to claim the right of appropriation has not been recognized by custom, or sanctioned by statute. That Crosby did not sustain any *bona fide* relation to the land is sufficiently evidenced by the fact that, although the land was surveyed and open to entry, he carried Rice's relinquishment to the government for nearly two years without filing it or making any entry on his own behalf. A mere squatter can claim no right, either as an appropriator or a riparian proprietor. *Kendall v. Joyce*, 48 Wash. 489, 93 Pac. 1091; Kinney, Water & Water Rights, § 286; *Alta Land & Water Co. v. Hancock*, 85 Cal. 219, 24 Pac. 645, 20 Am. St. 217; *Smith v. Logan*, 18 Nev. 149, 1 Pac. 678. It follows that respondents' title to the waters of Antoine creek must date from the time of their entry in 1904, at which time they were subject to the prior appropriation of the appellants who, as the evidence shows, will probably need the entire flow in the dry season of the year.

The case falls squarely within the rule of *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308, rather than *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107; and *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1032, as is contended by respondents. The latter cases define the rights of parties riparian to a stream to use water for irrigation as an incident to their riparian right, and do not apply unless the rights of all parties are equal and dependent upon riparian right. In the case at bar, the waters of Antoine creek were appropriated and being used at the time respondents settled and filed on their land, and were not subject to a riparian right to use the waters for irrigation, as against the first appropriator who has perfected his title and was with reasonable diligence extending the area of cultivation on his lands riparian to the stream.

"It is an elementary principle of the law of appropriation of water for irrigation that the first appropriator is entitled to the quantity of water appropriated by him, to the exclusion of subsequent claimants by appropriation or riparian ownership." *Longmire v. Smith, supra.*

It is unfortunate that the flood waters of Antoine creek cannot be conserved for the use of all, but, so long as our laws measure the rights of the appropriator of water by the necessities of the dry season, the first in time must be held to be the first in right. The just purpose of the trial judge to apportion the waters cannot be sustained in the light of the evidence showing that there is no excess of water running to, or wasted by, the appellants.

This cause is remanded with instructions to enter a decree fixing the amount of water actually necessary to irrigate the lands of appellants, even to the full flow of the stream in the dry season; leaving the residue, if any, subject to the riparian right of respondents.

Rudkin, C. J., Fullerton, Gose, and Morris, JJ., concur.