DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 10837. Department One. October 9, 1913.]

CARL A. SANDER et al., *Plaintiffs and Respondents*, v.
CHARLES BULL et al., *Defendants*, HENRY WASHBURN
et al., *Interveners and Respondents*, VICTOR
ZUMBRUNEN et al., *Defendants and
Appellants*.[1]

WATERS AND WATER COURSES—APPROPRIATION—ON RAILROAD LANDS.
Waters of a stream on land embraced within the grant to the North-
ern Pacific Railway are not subject to appropriation subsequent to
the date upon which the company filed its map of definite location;
since the doctrine of riparian rights prevails in this state, and
waters may be appropriated only from streams flowing upon public
lands.

SAME—APPROPRIATION—WHAT CONSTITUTES. Appropriation of
water consists in an intention to appropriate, followed by reason-
able diligence in applying the water to a beneficial use.

SAME—APPROPRIATION—CONFLICTING RIPARIAN RIGHTS. Where
rights in public lands are initiated prior to any appropriation of
the waters of a stream thereon, the rights of riparian proprietors
are determined by the rules of the common law and not by any
rule of prior appropriation.

SAME—RIPARIAN RIGHTS—STATUTES—CONSTRUCTION. The act of
1873, p. 520, with reference to the appropriation of waters in
Yakima county, did not destroy riparian rights after the land had
passed into private ownership.

SAME—APPROPRIATION—GOOD FAITH OF SETTLER. One seeking ap-
propriation of waters for irrigation must be an actual *bona fide*
settler, having a possessory interest, with intent to acquire title.

[1]Reported in 135 Pac. 489.

SAME—APPROPRIATION—ABANDONMENT. To constitute an abandonment of appropriated waters, an intent to abandon and an actual relinquishment must concur.

SAME—PRESCRIPTIVE RIGHTS TO APPROPRIATED WATER. A prescriptive right to water which had been appropriated, is not initiated until the prior appropriators are deprived of its use in such a substantial manner as to notify them that their rights are being invaded.

SAME—APPROPRIATION—GOOD FAITH—PRESUMPTIONS. It will be presumed that a settler in possession of Northern Pacific railroad lands prior to the filing of the map of definite location of the railway company, who had a card and a contract to purchase from the company, and who obtained a deed from the company after the map of definite location was filed, was holding under a license from the company, with intention in good faith to acquire title; hence his appropriation of waters for irrigation was valid.

SAME—APPROPRIATION—PRIORITY. As between riparian owners claiming waters for irrigation of their lands and deraigning title from the same source, those prior in time are prior in right.

SAME—APPROPRIATION—GOOD FAITH—SQUATTERS. An Indian who farmed and irrigated a few acres of land for a period of ten years, and his successor, who remained on the land for about a year, giving way to one who contracted for the land with the railroad company and obtained a railroad deed, were mere squatters and not entitled to appropriate the waters of a stream for irrigation.

SAME—GOOD FAITH—EVIDENCE. In the absence of any evidence of the *bona fides* of early settlers at one time in possession of public lands, their appropriation of waters is unavailing to a successor.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered October 16, 1911, upon findings in favor of the plaintiffs and interveners, after a trial on the merits before the court without a jury, in an action to enjoin the diversion of waters for irrigation purposes. Modified.

*Robert F. Booth* and *R. G. Sharpe*, for appellants.

*Bogle, Graves, Merritt & Bogle* and *John H. McDaniels*, for respondents.

*E. E. Wager*, for interveners.

GOSE, J.—This suit arose out of a controversy over the use of the waters of Wilson and Nanum creeks, in the Kittitas valley, for irrigation purposes. These streams have their source in the mountains and flow southerly in separate canyons to the northerly end of the Kittitas valley, where they unite and flow in a common stream for about a mile. The waters then divide, the Nanum creek flowing in a southeasterly direction, the Wilson creek in a southwesterly direction. The plaintiffs' lands are situated on the Wilson creek below the point of separation. The lands of the interveners are situated on the Nanum creek below the point of separation. The lands of the defendants (other than the defendant Ross) are situated upon one or both of the streams, above the lands of the plaintiffs and interveners. The rights of the plaintiffs and the interveners are not in conflict, their respective rights having been determined in former litigation. The plaintiffs and the interveners make common cause against the defendants, and they in turn make common cause against the plaintiffs and interveners. The plaintiffs and the interveners prevailed in the trial court, and certain of the defendants have appealed. The record is a lengthy one, consisting of more than a thousand pages. We cannot therefore follow the argument of the appellants in detail, but will only discuss the questions which appear to us to have the greatest merit.

The plaintiffs and interveners primarily rest their rights upon a prior appropriation of the waters of these streams. The court, as against the defendants and each of them, awarded the several plaintiffs and the several interveners a prior right to the use of one inch of water for each acre of land severally owned by them. It defined the term "one inch of water" as "an inch of water under four-inch pressure, measured according to the custom of miners, and is hereby defined to be an amount of water which will continuously and constantly flow through an orifice one inch square in a box maintained at a level in which a sufficient quantity of water is let to keep the surface thereof four inches above the center of

such orifice, the bottom of such orifice being two inches above the bottom of such box."

Appellants have argued at considerable length that a half inch of water per acre is sufficient for irrigation. The testimony, however, in this respect is conflicting, and we feel constrained to adopt the finding of the court. We are somewhat influenced by the fact that in earlier litigation between the plaintiffs, the interveners and third parties, three trial judges awarded this amount to the plaintiffs and interveners up to July first, and one-half inch per acre thereafter. The deduction after July first was no doubt made because of the inadequacy of the supply of water.

Appellants, other than Ross, claim both by prior appropriation and as riparian owners. Ross claims a right by prescription. The appellants also contend that the plaintiff Sander has lost the right to a mill power by abandonment.

The plaintiffs and interveners claim (1) by prior appropriation, and (2) as riparian owners. Some of the appellants also contend that, as owners of place land embraced in the grant to the Northern Pacific Railroad Company, there could be no appropriation as against them subsequent to the date upon which the company filed its map of definite location. These suggestions require a consideration of the law of the case.

The waters of these streams were not subject to appropriation after the 24th day of May, 1884, the date upon which it is agreed the railroad company filed its map of definite location. The company acquired no vested interest in the granted lands prior to that time. It was then that the grant took effect. Before that time it was public land, and as such subject to entry and subject to the law of prior appropriation. *Wilson v. Northern Pac. R. Co.*, 188 U. S. 108.

Appropriation of water consists in an intention to appropriate followed by reasonable diligence in applying the water to a beneficial use. *Offield v. Ish*, 21 Wash. 227, 57 Pac. 809; *Longmire v. Smith*, 26 Wash. 439, 67 Pac. 246, 58 L. R. A.

308. Water may only be appropriated from streams flowing upon public lands (*Longmire v. Smith, supra*) ; and before riparian rights are initiated or acquired. *Sturr v. Beck,* 133 U. S. 541; *Still v. Palouse Irr. & Power Co.,* 64 Wash. 606, 117 Pac. 466; *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107; *Gose v. Blalock,* 21 Wash. 75, 57 Pac. 342; *Sander v. Wilson,* 34 Wash. 659, 76 Pac. 280; *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1032; *Mason v. Yearwood,* 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158.

In *Sturr v. Beck,* in discussing this question, the court said:

"When, however, the government ceases to be the sole proprietor, the right of the riparian owner attaches, and cannot be subsequently invaded. As the riparian owner has the right to have the water flow *ut currere solebat,* undiminished except by reasonable consumption of upper proprietors, and no subsequent attempt to take the water only can override the prior appropriation of both land and water, it would seem reasonable that lawful riparian occupancy with intent to appropriate the land should have the same effect."

In *Benton v. Johncox,* after observing that water is an integral part of the soil over which it flows; that the riparian rights of a patentee of the government attach, by relation, at the inception of his title and will be protected as against subsequent appropriation of the water naturally flowing over the land, the court said:

"Moreover, the doctrine of appropriation applies only to public lands, and when such lands cease to be public and become private property, it is no longer applicable. Gould, Waters, § 240; Pomeroy, Riparian Rights, § 30; *Curtis v. La Grande Water Co.,* 20 Ore. 34, (23 Pac. 808)."

In the *Nesalhous* case, the court said:

"The right to appropriate water for mining and agricultural purposes from water courses on the public domain is sanctioned by acts of Congress, and recognized by all the courts; but when the government ceases to be the *sole* proprietor the right of the riparian owner attaches and cannot be sub-

sequently invaded in those states where the common law
doctrine of riparian rights prevails."

In *Mason v. Yearwood,* we said:

"As we held in *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac.
1032, the common law doctrine of riparian rights prevails in
this state, and that where rights to lands across which a
stream of water flows are acquired or initiated prior to any
appropriation of the waters of the stream, the rights of the
riparian proprietors are determined by the rules of the com-
mon law relating to riparian proprietors, and not by any
rule of prior appropriation."

The language quoted from *Benton v. Johncox* was used
after referring to Laws 1873, page 520, and disposes of the
contention of the plaintiffs and interveners, *i. e.,* that that
act destroys riparian rights in Yakima county which then
embraced Kittitas county.

One seeking to appropriate the waters of a stream must
own the land sought to be irrigated, "or be an actual *bona
fide* settler having a possessory interest. There must be evi-
dence of an intent to acquire title." No rights flow from the
diversion and use of water by a mere squatter. *Avery v.
Johnson,* 59 Wash. 332, 109 Pac. 1028. See, also, *Kendall
v. Joyce,* 48 Wash. 489, 93 Pac. 1091.

To constitute abandonment, an intent to abandon and an
actual relinquishment must concur, "for courts will not light-
ly decree an abandonment of property so valuable as that of
water in an irrigation region." *Miller v. Wheeler,* 54 Wash.
429, 103 Pac. 641, 23 L. R. A. (N. S.) 1065.

Ross could not claim a prescriptive right so long as water
reached the plaintiffs and interveners in an amount equal to
their prior appropriation. *Miller v. Wheeler, supra.* A
prescriptive right to the use of water is not initiated until
the owners of the water "are deprived of its use in such a
substantial manner as to notify them that their rights are
being invaded." Long, Irrigation, § 90; *Hall v. Blackman,*
8 Idaho 272, 68 Pac. 19; *McCoy v. Huntley,* 60 Ore. 372,
119 Pac. 481.

The appellants contend that there is no evidence tending to show that the southwest ¼ of the northeast ¼ of section 25, township 18, north, of range 18 east (known as the Walters' tract), has ever been irrigated from the waters of Wilson creek. We cannot agree with this contention. The plaintiff Sander acquired this land from the Northern Pacific Railway Company. This tract was a part of its grant. Its history is this: One Emerson was in possession of it in 1883 or 1884, under a card from the railroad company. The card was an agreement on the part of the company to sell the land as soon as it acquired title. He transferred his right to one Walters. Walters transferred to Sander in 1887, and the company thereafter conveyed the land to Sander. The evidence shows that the tract was irrigated, but there is no evidence that it was irrigated prior to the 24th day of May, 1884, the date upon which the railroad company filed its map of definite location with the commissioner of the general land office. The attempted appropriation is ineffective as against the appellants who deraign title from the railroad company. The southeast ¼ of the northeast ¼, and the northwest ¼ of the southeast ¼ of section 25, township 18, north, of range 18 east, was acquired by Sander through a deed from the Northern Pacific Railway Company on May 31st, 1892. This tract is a part of the lands granted to the railroad company. The testimony shows that the plaintiffs Sander were in possession of this land as early as 1877. They probably had a contract of purchase as early as July 15, 1887. The tract was irrigated as early as 1881. The presumption is that the plaintiffs Sander were holding under a license from the railroad company at and before the date upon which it filed its map of definite location. The *bona fides* of their intention to acquire title to this land as early as 1881 is obvious.

Sander appropriated 400 inches of water in 1881 for power for milling purposes. This water was used for power for a flour mill until 1892, when the mill burned. Subsequent to

the appropriation, they sold 225 inches of water to the Ellensburg Water Supply Company, a corporation, to be diverted to the city of Ellensburg and used by its inhabitants. After the burning of the mill, the remaining power was used to operate a chop mill in connection with a creamery and dairy, which the plaintiffs Sander were then, and are now, conducting. The dairy comprised an average of about 100 cows. It is argued that there has been an abandonment of the mill power. It suffices to say that there is no evidence to sustain this contention. It is also argued that 70 acres of the Sanders land was not irrigated. The testimony shows that, including pasture, it was practically all irrigated.

The lands of the plaintiffs Haley include the southeast ¼ of the southeast ¼ of section 19, township 18, north, of range 19 east. This is a part of the railroad grant. Haley acquired title to this land on the 17th day of June, 1892. The testimony shows that he settled upon a timber culture containing 160 acres in the spring of 1878; that shortly after that time he took possession of the railroad forty; that he first had a card from the railroad company, then a contract, and later obtained a deed. He appropriated the water in 1878 and has since used it. The irrigation included the railroad land. He had a *bona fide* intention to acquire title, and his appropriation was prior to the appropriation of the several appellants.

The interveners Burke own the northwest ¼ of section 16, the northeast ¼ of section 9, and the southeast ¼ of section 9, all in township 18, north, of range 19 east. The appropriation for the irrigation of the northeast ¼ of section 9 was made in 1883. They got a contract from the railroad company in 1887 and a deed in 1892 for the land in the odd numbered sections. The appropriation for the southeast ¼ of section 9 and the northwest ¼ of section 16, was made in 1885. The court awarded them a prior right to 480 inches of water. They are only entitled to a prior right to 120 inches of water, as against the appellants, who deraign title

from the railway company.   The evidence shows that about 120 acres of the northeast ¼ of section 9 is irrigated.

The interveners Moffatt own the west half of the southwest ¼ of section 15, township 18, north, of range 19 east. Their appropriation began in 1889.  They deraign title from the Northern Pacific Railway Company through a deed dated December 2d, 1897.  They have no priority over the appellants who deraign title from the railway company.

The interveners Ploeger and Reese own the southeast ¼ of section 29, township 18, north, of range 19 east.  Their appropriation was made in 1887.  They deraign title through the Northern Pacific Railway Company.  They have no priority over the appellants who deraign title from the same source.

The interveners Wilson own the northeast ¼ of section 29, township 18, north, of range 19 east.  They acquired title by mesne conveyances from the Northern Pacific Railway Company.  Their appropriation was made in 1877. The history of this tract is this:  One Kinney settled on the land in 1876.  He lived there until 1880 and then sold to one Taylor.  Kinney had a card from the railroad company in 1876.  Taylor had a similar card in 1880.  The *bona fides* of their prior appropriation cannot be questioned.

The appellants Zumbrunen own about 100 acres of riparian land.  Eight or nine acres of this land has been irrigated since 1885.  Its history is this:  One Lillard settled upon this land in 1884.  He cultivated and irrigated eight acres of land in 1885.  Lillard lived upon the land about six years, and sold to Seaton in about 1890, who made final proof on the 11th day of September, 1897.  They have a prior right to the use of eight inches of water as against the interveners who appropriated subsequent to 1885, but as against the appellants who deraign title from the railway company, they have no valid appropriation.

The land of the appellant Ross is not riparian.  One Johnson settled on the Ross land as a desert claim and perfected

his title in 1890. A small amount of water was diverted to this land in 1885. The testimony as to its subsequent use and the quantity irrigated prior to the later appropriation of Moffett, Ploeger and Reese, is too indefinite to form the basis of a prescriptive right.

The appellants Bregg own the northwest ¼ of section 33, township 19, north, of range 19 east. They deraign title through the Northern Pacific Railway Company. The history of this tract is as follows: An Indian farmed and irrigated a few acres of this land from 1871 for a period of some ten years. He was followed by one Chris Halpin, who remained on the land about a year. He was succeeded by Sam Pearson, who contracted with the railway company for the purchase of the land and assigned his contract to one Gottstein, who got a deed from the railway company in 1890. Pearson had possession of the land from the spring of 1887 until about 1890. He raised and irrigated a little hay one season. Upon this testimony the Indian and Halpin were mere squatters. There is no testimony as to how much land Pearson farmed or irrigated, and he only irrigated one season. The evidence fails to show an appropriation prior to the appropriation made by the plaintiffs and interveners.

The appellants Stanley own the northwest ¼ of section 20, township 19, north, of range 19 east. They took possession of the land in July, 1898. Ten or twelve acres were then in cultivation. One Chisholm went upon the land somewhere between 1890 and 1892. Their appropriation was subsequent to that of the plaintiffs and interveners.

The appellants Sherman settled upon their land in 1892 and made their appropriation the same year. Their appropriation is subsequent in point of time to the several appropriations of the plaintiffs and interveners.

The appellants Farrell acquired title in 1908 to the south ½ of section 29, township 19, north, of range 19 east. These lands are riparian to Wilson and Nanum creeks. Farrell deraigns title by mesne conveyances from the Northern Pacific

Railway Company. The history of this tract is as follows: One Filer was on the place in 1885. He cultivated and irrigated about six acres. He sold to one George Wilson in 1886 or 1887. One Carpenter succeeded Wilson and lived on the place four or five years, probably up to 1893. He cultivated ten or twelve acres. The evidence fails to show a *bona fide* appropriation.

The appellants Manning own the east ½ of the northeast ¼, and the east ½ of the southeast ¼, of section 20, township 19 north, of range 19 east. This land is riparian to Nanum creek. They deraign title through one Fetters, who acquired title from the United States on the 21st day of April, 1901. The history of this tract is as follows: One Staples had possession in 1887. He was succeeded by one Smith, who in turn was succeeded by Fetters. There is no evidence of the *bona fides* of any settler before Fetters, and there is no evidence as to when he settled. There was no appropriation prior to the several appropriations of the plaintiffs and interveners, and their riparian rights are subject to the earlier appropriations.

The testimony is indefinite as to the number of acres irrigated upon the lands of the interveners who deraign title through A. B. Whitson, Edward Whitson, and B. F. Whitson, including the northwest ¼ of section 28, township 18, north, of range 19 east, upon which one Jesse McDonald filed a preemption claim in 1872, and which later formed a part of the Whitson land. The same is true of the northwest ¼ of the northeast ¼ of section 33, township 18 north, of range 19 east, now owned by the interveners Watson.

The case will be remanded with directions, (a) to take testimony and ascertain the quantity of lands now irrigated upon these tracts, including pasture lands, and to award a prior right to these tracts on the basis of one inch of water as defined in the decree, to each acre actually irrigated, and (b) to take testimony and settle the riparian rights between the appellants and the interveners, who have no prior rights

by appropriation, including the Walters' forty-acre tract belonging to the plaintiffs Sander, if it is riparian, and (c) to modify the decree in respect to priority of appropriations in harmony with this opinion.

No costs will be allowed.

CROW, C. J., CHADWICK, PARKER, and MOUNT, JJ., concur.