[No. 18261.　Department Two.　March 19, 1924.]

*In the Matter of the Determination of the Rights to the Use of the Waters of Alpowa Creek.*

THE STATE OF WASHINGTON, *Respondent,* v. J. A. ANDERSON *et al., Appellants.*[1]

WATERS AND WATER COURSES (6)—APPROPRIATION—BENEFICIAL USE —DILIGENCE. A bona fide appropriation of waters on public lands for a beneficial use, consisting of an intent to appropriate followed by reasonable diligence, is superior to subsequently acquired riparian rights, which date from the first step taken to acquire title from the government.

SAME (6)—DILIGENCE—EVIDENCE—SUFFICIENCY. Reasonable diligence in the appropriation of water depends upon circumstances, and where the creek was small and remote from civilization, small use and slow development under adverse circumstances is sufficient, the law not requiring immediate use.

SAME (8, 20)—APPROPRIATION—NOTICE—EVIDENCE OF INTENT— SUFFICIENCY. An intent clearly established and notice thereof to use a larger quantity of water will uphold an enlargement of the system, though riparian rights had attached.

[1]Reported in 224 Pac. 29.

SAME (15)—IRRIGATION—APPROPRIATION—CHANGE IN PURPOSE OF USE. The use of appropriated water may be changed from mining and milling purposes to irrigation purposes without loss of the right, notwithstanding conflicting riparian rights.

SAME (13)—RIGHTS ACQUIRED—PRIORITIES—GRANTEE OF APPROPRIATOR—RESERVATIONS IN DEED. The reservation in a deed by the original appropriator of all water rights connected with the real estate, and providing that the grantee shall have the right to use such water as may be necessary to irrigate his lands, was intended to grant the right to use surplus waters not appropriated by the grantor.

SAME (2, 6)—APPROPRIATION—PERSONS ENTITLED—OWNERSHIP OF LAND—INTENT AND DILIGENCE—BENEFICIAL USE OF WATERS. A prior appropriation of water makes one a conditional owner of the water, subject to disposition, provided it is put to a beneficial use, intent and diligence therein being the controlling features.

Appeal from a judgment of the superior court for Asotin county, Truax, J., entered March 29, 1923, upon findings in favor of certain defendants, in an action to determine the right to the use of the waters of a stream for irrigation, tried to the court. Affirmed.

*Homer L. Post,* for appellant Wilson.

*A. G. Farley, Fred E. Butler,* and *Edward C. Butler,* for appellants Taylor *et al.*

*C. A. McCabe,* for respondents Houser.

*The Attorney General (Fred J. Cunningham,* of counsel), for respondent State of Washington.

BRIDGES, J.—The purpose of this action was to adjudicate the water rights of the various riparian owners on, and appropriators of water from, Alpowa creek.

That creek is a small, non-navigable stream, about twenty-five miles long, rising in the Blue Mountains, in the southern part of Garfield county, flows in an easterly direction through Garfield and Asotin counties and discharges into the Snake river. The average pre-

cipitation in the vicinity of the creek is about eighteen inches per annum, six inches of which is during the irrigating season. The creek supplies sufficient water to irrigate all the lands except during the dry months of August and September. The main fight here is waged between what we may term the upper riparian owners on one side and those receiving water from what is known as the Houser irrigation ditch on the other. Most of the land irrigated from this ditch is non-riparian to Alpowa creek. The ditch takes its water from the creek about two miles above its mouth. The settlers on the upper stretches of the creek have from time to time constructed small ditches by means of which they have taken waters sufficient to irrigate small tracts of land. About five hundred acres all told have been irrigated from the waters of this creek, of which about three hundred and forty acres obtain their waters from the Houser ditch. If the Houser ditch be given preference rights, then, during the dry season, there is often but little, if any, water for irrigating the other lands on the creek, and if such other lands be given preference over the Houser ditch lands, then the latter must greatly suffer during the dry season.

Because of the conditions above noted, and the further fact that for many years there has been much litigation over these waters, the state hydraulic engineer, acting under the authority of the state water code (Laws of 1917, ch. 117, p. 447) [Rem. Comp. Stat., § 7351], instituted this proceeding for the purpose of finally adjudicating the rights of all the contending parties. The matter being referred to him as referee, he took testimony and made an elaborate report to the superior court, where the matter was pending. He divided the lands into fifteen classes, the preference rights being indicated by the number of the class. He determined that those who took water from the Houser

ditch should first be served, and they were put in the first class. The controversy here is largely between them and all the other owners. The trial court adopted the recommendations of. the referee and entered a decree accordingly. The case has been elaborately and learnedly briefed and argued. We cannot find space here to note particularly all of the questions presented. We must limit our discussion to such points as seem to us to be most important and controlling.

(1)   The following facts are either without dispute or, in our opinion, conclusively shown: In 1877, the Houser ditch was constructed, and at all times since water has been conveyed therein. From the beginning, some of these waters have been used for irrigating purposes on a part of the lands now authorized to use this ditch. The ditch was constructed before any of the appellants obtained their lands or initiated steps for that purpose and was the first water to be taken from the creek for any use. The dates of settlement of the appellants run from 1877 to 1901, and the dates of the initiation of water rights other than such as belonged to them as riparian owners run from 1879 to 1908, except the appellant D. B. Palmer made his settlement in 1871, and at that time acquired his riparian rights. Mr. Palmer, however, did not appear in the case nor introduce any testimony. He has less than three acres under irrigation and was by the court placed in the third class.

After the construction of the Houser ditch and in 1877, David H. Mohler and George W. Gunter posted a notice claiming five hundred inches of water of this creek for milling and manufacturing purposes, and on the same date Mr. Gunter posted another notice claiming to be the owner of that ditch for agricultural purposes. A part of the waters of this ditch was used first for the operation of a mill, and later used for

several years in the operation of a placer mine on the banks of the Snake river, near the mouth of Alpowa creek. During all of these years some of the water was used for irrigating purposes on some of the lands now watered from the Houser ditch. Ultimately the milling and mining ceased, and since that time these waters have been used for purposes of irrigation. It is unnecessary to here trace the rights of the various owners placed in class one to obtain waters from the Houser ditch, because there appears to be no serious controversy about that matter. Additional and controverted facts will be mentioned as the discussion proceeds. It will be observed that the Houser ditch antedated all other diversions from the creek and all manner of riparian rights now vested in the appellants.

(2) The doctrines of appropriation and riparian rights have been recognized in this state from an early date. Such rights are neither inconsistent nor antagonistic. The common law rule of riparian rights has been stripped of some of its rigors and is at least modified to the extent of appropriation upon public lands. *In re Doan Creek,* 125 Wash. 14, 215 Pac. 343, and cases cited. But riparian rights cannot be defeated by subsequent appropriation. *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489, and cases therein cited. A bona fide appropriation of water for a beneficial use is superior to subsequently acquired riparian rights. *Sander v. Bull, supra,* and *In re Doan Creek, supra,* and cases therein cited. Riparian rights date from the first step taken to secure a title from the government. *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am St. 912, 39 L. R. A. 107. An appropriation of water consists of an intention to appropriate followed by a reasonable diligence in applying the water to a beneficial use. *Sander v. Bull, supra,* and *In re Doan Creek, supra,*

and cases cited. Prescriptive rights to water cannot be acquired until the owner of the water has been deprived of its use in such substantial manner and degree as to notify him that his right is being invaded. *Sander v. Bull, supra.* While the foregoing principles of law are thoroughly settled in this state, it is well to keep them in mind in the further discussion of this case.

(3) The appellants strongly attack the preference rights given by the court to the Houser ditch. It is their argument that, although it be conceded that this ditch in point of time preceded all other appropriations and riparian rights, yet there has not been reasonable diligence in applying the waters to irrigation and other useful purposes, and that the preference right given to that ditch should, in equity, be for the irrigation of only about twelve acres of land, instead of nearly three hundred and forty as provided by the trial court. This question of diligence has been discussed by us in the following cases: *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495; *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945; *Pleasant Valley Irrigation & Power Co. v. Okanogan Power & Irrigation Co.,* 98 Wash. 401, 167 Pac. 1122; *Sander v. Bull, supra; In re Doan Creek, supra.* As to what may be considered reasonable diligence in putting appropriated waters to a beneficial use must depend to a large extent upon circumstances. The lands in question are sparsely settled and located far from any trade centers. The creek is small and its water insufficient for all purposes. The country in the vicinity has, because of its character and remoteness from civilization, developed very slowly. Yet, under all of these adverse conditions, some irrigation has been carried on from an early date by means of the Houser ditch, and the amount of that

irrigation has gradually but surely increased. A part of the waters have at all times been used for other beneficial purposes, such as milling and mining. The law does not require an immediate use. The doctrine of common sense applies. In making the appropriation intention is an important factor. All the appropriated water need not be at once used. Reasonable diligence in making a beneficial use is all that is required.

"Appropriation of water consists in the intention, accompanied by reasonable diligence, to use the water for the purposes originally contemplated at the time of its diversion." *Offield v. Ish,* 21 Wash. 277, 57 Pac. 809.

The referee has had a long, wide and intelligent experience in matters of this character. Upon somewhat conflicting testimony he found that reasonable diligence had been exercised, and the trial court saw fit to come to the same conclusion. Without further discussing the facts, we may say that we do not feel that we would be justified in interfering with the findings thus made.

(4) But it is said that the Houser ditch was, in 1877, a small affair and was not enlarged until 1883, when many riparian rights had attached, and that a preference should be given, if at all, to the ditch only for such waters as it would carry in its original state. We cannot agree with this argument. The intention of the original appropriators must be seriously considered. The notices given by them showed that they appropriated, or intended to appropriate, a larger quantity of water than is given by the decree to this ditch. It is probably true that these notices, being unauthorized by law, did not actually create rights, but they are strong evidence of claims of right and of the intention of the parties, and these intentions were made

public in the only way possible at that time and under the circumstances. It is our view, therefor, that it is immaterial that the ditch was subsequently enlarged.

(5) But it is stoutly argued that only such waters as were used for irrigation purposes prior to the attachment of the rights of the appellants, either by appropriation or riparian ownership, may now be given an irrigation preference, and that such preference cannot be accorded to those waters which were used for mining and milling purposes. In other words, the argument is that there cannot be a change of use of waters appropriated, to the detriment of riparian owners. The law on this question seems to be well settled against appellants' contention. It is clearly and tersely stated in 27 R. C. L. 1279:

"The appropriator of water is not limited in its application to that use for which he made the appropriation. On the contrary he may apply the water to any beneficial use that he chooses, and in changing from one use to another he does not in any way lessen his rights or forfeit his priority as an appropriator. If this were not true, a change of circumstances by which the use of the water for the purpose first contemplated would no longer be profitable would result in a practical destruction of the appropriator's interest therein, and in a loss by him of all the water and of the appliances by which it had been diverted, however valuable, as where the chief, and perhaps the only, purpose at first contemplated was the use of the water for mining, and the mines in which it was used have proved unprofitable or become exhausted. . . . The appropriation having become perfect by the diversion of the water and its application to a useful purpose, the appropriator and his successors in interest acquire the right to use the water thus actually appropriated, either for the purpose originally contemplated or for any other lawful purpose."

To the same effect are the following cases: *Wimer v. Simmons*, 27 Ore. 1, 39 Pac. 6, 50 Am. St. 685;

*Nevada Ditch Co., v. Bennett,* 30 Ore. 59, 45 Pac. 472, 60 Am. St. 777, and note; *Head v. Hale,* 38 Mont. 302, 100 Pac. 222; *Creek v. Bozeman Water Works Co.,* 15 Mont. 121, 38 Pac. 459; *Hargrave v. Cook,* 108 Cal. 72, 41 Pac. 18, 30 L. R. A. 390.

(6) Special argument is made on behalf of appellant Wilson to the effect that he is entitled to priority as to a part of his land known as the Grieves' Homestead, because of rights given him by Mr. Houser, who was probably the original or one of the original owners of the ditch in question. Houser conveyed these lands to Davis and the latter to Wilson. The deed provided that "all water rights pertaining to or connected with said real estate acquired by first party (Houser) through any other source or sources whatsoever" are reserved and "second party (Wilson's grantor) shall have the right to use such quantities of waters out of the Alpowa creek as may be necessary to irrigate said lands." When the circumstances and situation of the parties are considered, it must be held that Houser intended to reserve to himself all water rights which he had acquired and that his grantee was given the right only to surplus waters.

(7) Appellant Wilson also claims rights by prescription. We will not make a detailed discussion of this question. This claimed right is based upon disputed testimony and we do not think it is sufficient. That he used some of the waters of the creek to irrigate his lands is certain. But we do not find that that use was hostile and adverse to the Houser ditch appropriation. The lands served by that ditch continued to be served. Wilson did not make such use of the waters from the ditch, nor did he make such use of the creek waters as to notify the Houser ditch owners that their rights were being invaded. *Sander v. Bull, supra.* The referee, as well as the trial court, found against Wilson

on this question, and we think their conclusions are justified by the testimony.

(8)   Complaint is made that the Houser ditch preference is given to lands both non-riparian and not owned by the appropriators, either at the time of appropriation or at all.   But we think this position is not tenable.   Once a prior appropriation is made, the appropriator becomes a conditional owner of the water he has thus appropriated.   The condition is that he must use reasonable diligence to put it to a proper use. Being his property, he may make such use of it as he sees fit; provided, of course, the use is a beneficial one. He may use it himself or give or sell it to others for a beneficial use.   It is not even necessary that he be the owner of any lands, riparian or otherwise.   The intent of the appropriator and the exercise of diligence in putting the water to a beneficial use are the controlling features.   These rules seem to be so well settled that we deem it unnecessary to cite authorities other than Kinney on Irrigation, vol. 2 (2d ed.), page 686; ch. 41, beginning with page 1311, and particularly §§ 767, 768 and 773.

We have duly considered the other points raised by the appellants, but we do not consider it essential to particularly note them.   The testimony on both sides of the case is, because of the long lapse of time, more or less unsatisfactory.   It seems to us, however, that the state hydraulic engineer, as referee, has tried to dispassionately consider the facts involved and to arrive at equitable conclusions therefrom, and a careful consideration of the case convinces us that he has so done.   Nor does the conclusion to which he came violate any legal principles which should be applied to the facts as found by him.

The conclusion we have come to on the merits makes

it unnecessary for us to dispose of respondent's motion to strike the statement of facts.

The judgment is affirmed.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.