[No. 14053.   Department Two.   October 10, 1917.]

PLEASANT VALLEY IRRIGATION & POWER COMPANY, *Plaintiff*,

v. OKANOGAN POWER & IRRIGATION COMPANY,

*Defendant*.[1]

WATERS AND WATER COURSES—APPROPRIATION — DILIGENCE — EVIDENCE—SUFFICIENCY.  Diligent and timely prosecution of an irrigation project, in compliance with Rem. Code, §§ 6317 to 6319, under a notice of appropriation of the waters of a creek to be diverted and used for "irrigation, storage, power and domestic purposes," is sufficiently shown where it appears that the initial notice was posted December 28, 1908, construction work was commenced early in 1909 within the six months required by Id., § 6318, for "diversion" works, and work was commenced on the dam for the purpose of converting it into a reservoir by assembling tools for construction work in February, 1909, and excavation commenced in April as soon as the snow went off and the ground could be worked; and the same is a sufficient compliance with the provision of Id., § 6318, requiring construction of "storage" works to be commenced within three months after posting notice.

SAME—APPROPRIATION—PRIORITY—QUANTITY — RELICTION.   Under Rem. Code, § 6319, providing that, by strict compliance with the rules for the appropriation of water by notice and diligent prosecution of the work, the appropriator's rights relate back to the time the notice was posted, the principle applicable is, first in time, first in right; and it is error to confine the appropriation of water for a comprehensive system to the waters actually diverted, where the work commenced was within the plan and system set out in the notice, the carrying capacity of the works started equalled the amount of the water appropriated by the notice, and subsequent appropriators had actual knowledge of the notice, the beginning of the work, the diligent prosecution of the plan specified in the notice, the beginning of the construction of the reservoir, and the putting of the water diverted to a beneficial use.

SAME—APPROPRIATION —ABANDONMENT — EVIDENCE — SUFFICIENCY. The abandonment of an appropriation of water for irrigation, storage, power and domestic purposes is not shown by the fact that, at one time, the appropriator contemplated the construction of additional reservoirs, nor by the fact that a map filed in the land office did not show the location of a flume and pipe line connecting up the waters claimed, nor by the fact that the main canal was of the

[1]Reported in 167 Pac. 1122.

same size below as above the mouth of a pipe line connecting the waters appropriated.

APPEAL—REVIEW—HARMLESS ERROR — DELAY IN ENTERING JUDG-MENT.  Error cannot be predicated on delaying a decision for several months after the ninety-day period required by law, where no prejudice was shown.

APPEAL—REVIEW—DISCRETION—REOPENING CASE.  Refusing to re-open a case for further evidence is discretionary and will not be reversed where no injury or prejudice was shown.

Cross-appeals from a judgment of the superior court for Okanogan county, Pendergast, J., entered July 19, 1916, in an action to quiet title to waters of a stream, tried to the court.  Affirmed on defendant's appeal; reversed on plaintiff's appeal.

*Chas. A. Johnson,* for plaintiff.

*Blaine & Kinne* and *A. J. O'Connor,* for defendant.

HOLCOMB, J.—This is a controversy between two domestic corporations engaged in the irrigation of lands, over the right to divert, store and use the waters of a certain stream called Sweat creek, on the West Fork of Loop Loop creek, in Okanogan county.  As both parties appealed from the decree entered, the parties will be referred to herein as plaintiff and defendant.

Each party, by affirmative pleadings, set forth its several appropriations, by notice, of the waters of the stream; the diligent construction of diversion works; the diversion of the waters by it, and the application thereof to beneficial uses to the extent of the diversion; the interference therewith by the other party, and irreparable damages resulting therefrom to the parties respectively.  Each party prayed that its title be quieted in and to the waters of the stream to the extent of its appropriation and use, and for permanent injunctive relief.

The court decreed:

"(1)  That, before defendant initiated any claim to the water of Sweat creek, plaintiff, during the summer of 1911,

prior to the filing of any notice of claim of water right by defendant to any of the waters of Sweat creek, by actual diversion by gravity system, had diverted five cubic feet of water per second of time, and conveyed the same through the Clark ditch, and furnished water thereby for beneficial irrigation, and thereby acquired a water right in the waters of Sweat creek to the extent of five cubic feet per second of time from the 1st day of May until five weeks therefrom; and that plaintiff's claim for that amount of water to the flood waters of Sweat creek, as against the defendant, was a prior right to such water right.

"(2) That the water notice posted by Edwin Barker on the 28th day of December, 1908, is a separate and distinct filing for a claim of water right from the other water filings of the plaintiff on the Loop Loop and Little Loop Loop; that the notices of water right posted and filed by the plaintiff on the Little Loop Loop and on the Loop Loop are further up the Loop Loop than where Sweat creek empties into the Loop Loop and that as against the plaintiff the defendant has a superior right to the waters of Sweat creek, excepting as hereinbefore adjudged, to the extent of ten cubic feet per second of time, and that, after the defendant has obtained ten cubic feet per second of time, if there are any surplus waters in Sweat creek, the plaintiff may then have the use of the waters of Sweat creek to the extent of eight cubic feet of water per second of time.

"(3) That the plaintiff has a right to divert from Sweat creek through its pipe line and inverted siphon and other proper mains to convey the same into Leader lake reservoir, and to be thence carried for irrigation purposes or irrigation and power purposes on plaintiff's project.

"(4) That the injunction heretofore granted in this cause against the defendant be dissolved and set aside, and that each party pay his own costs in this action."

Plaintiff complained of, and appeals from, that portion of the decree to the effect that the water notice posted by Edwin Barker on December 8, 1908, is a separate and distinct filing from its other filings on Loop Loop and Little Loop Loop, and that the court erred in holding and deciding that defendant has a superior right to the waters of Sweat creek, excepting five cubic feet per second for five weeks after May

each year, as against plaintiff to the extent of ten cubic feet per second; that the court erred in dissolving the injunction, and that the court erred in holding that plaintiff should pay its own costs; that the court erred in failing to hold and decree that the water right notice posted by Barker on December 26, 1908, was a part of plaintiff's plan to store the waters of Loop Loop and its tributaries in Leader lake reservoir; that the court erred in failing to hold and decree that plaintiff was entitled to prior right as against defendant to divert, store, and·use the waters of Sweat creek to the extent of eight cubic feet per second of time; and erred in refusing an ·injunction against defendant enjoining it from interfering with plaintiff's rights to the waters of Sweat creek, etc.

Defendant complains of, and appeals from, the first paragraph of the decree, and the second paragraph in so far as the same denies the right of the defendant to the waters of Sweat creek, to the carrying capacity of defendant's ditch when completed, and to the third and fourth paragraphs of the decree.

The initial claim of water right under which plaintiff claims was one filed by Edwin Barker on December 27, 1908, claiming the use of the waters of Sweat creek to the extent of thirty cubic feet per second. The notice states, that it was intended to divert the water at or near the point where a copy of the notice was posted, and more definitely described as about a quarter of a mile up the creek from the junction of Sweat and Big Loop Loop creeks; that the purpose for which the water was intended to be used was irrigation, storage, power, and domestic purposes; that the place of intended use was on lands in townships 32 and 33, north, range 25 E., W. M.; that it was intended to divert the water by means of ditch or flume, or by both and by siphon if need be, across the Big Loop Loop canyon to a reservoir on section 15, township 33, north, range 25 E., W. M.; that the general course of the proposed canal was southwest; that the length of the pro-

posed canal is about three and one-half miles; that it was intended to use the waters for irrigating lands in townships 32 and 33 north, range 25 E., W. M., Okanogan county, Washington. The plaintiff company was incorporated January 16, 1909. The above water right and all rights acquired thereunder were assigned and conveyed by Barker to plaintiff on June 18, 1910. Sweat creek is a tributary of Loop Loop creek. Another tributary is called Little Loop Loop creek.

Defendant projected an irrigation scheme of a different character, operating in a different locality, reaching different lands, but seeks to acquire the same waters claimed by plaintiff for its beneficial use. Plaintiff, in its two causes of action, claims the waters of Sweat creek. Defendant claims the waters by certain notices or claims of appropriation for the same waters, to the extent of fifty cubic feet per second of time; the first, posted September 30, 1911, specifying the point of diversion of water of Sweat creek at the point where the notice was posted, being on the right bank of that creek about one-half mile above its confluence with the Loop Loop creek; a second notice, posted on March 2, 1912, claiming the same water and at the same place, the purpose of posting and filing of which notice does not clearly appear; and a third notice of claim, posted on October 14, 1912, giving notice of intention to modify and amend the previous notices, and to change the point of diversion or intake of the water claimed to a point 173 feet above the point of the prior notices by defendant. This would place its point of diversion above the intake of plaintiff's flume.

The statutory provisions governing the appropriation and use of water are, Rem. Code, §§ 6317, 6318 and 6319:

"§ 6317. Any person, persons, corporation, or association desiring to appropriate water must post a notice in writing in a conspicuous place at the point of the intended storage or diversion, stating therein,—

"(1) That such appropriator claims the water lying, being, or flowing to the extent of one cubic foot of water per

second of time, or some multiple or some fractional portion thereof;

"(2) The purpose for which said water is appropriated, and the place or places, as near as may be, of intended use;

"(3) The means by which it is intended to store or divert the same;

"(4) A copy of the notice must, within ten days after it is posted, be filed for record in the office of the county auditor of the county in which it is posted.

"§ 6318.  If said use is by storage, the appropriator must, within three months after the notice is posted, commence the construction of the works by which it is intended to store the same.  If said use is by diversion, the appropriator must, within six months after the notice is posted, commence the excavation of the works by which it is intended to divert the same; it being herein expressly provided that such works must be diligently and continuously prosecuted to completion, unless temporarily interrupted by the elements.

"§ 6319.  By a strict compliance to the above rules the appropriator's rights to the use of the water actually stored or diverted relates back to the time the notice was posted, but a failure to comply therewith deprives the appropriator of the right to the use of the water as against a subsequent appropriator who faithfully complies with the same."

The principle applicable is, first in time, first in right. The general contention of defendant is that plaintiff did not comply with these sections, and that, by virtue of the last section, it acquired the rights which it claims; and it contends, among other things, that plaintiff did not begin its storage works within three months as required by § 6319, that the commencement of the diversion works within six months does not protect its rights to store water, that its notice and system was for the storage of water rather than for direct diversion of water, and that, by not commencing storage works within three months, it lost its rights to the water as against subsequent appropriators in good faith.  It is also contended by defendant that there is evidence of abandonment of the system proposed by the original notice by Barker of the rights acquired thereunder.

Plaintiff company is a corporation formed principally by farmers and residents in that section of Okanogan county, and included Edwin Barker, the original appropriator of the water of Sweat creek, and five other residents of that locality. It is shown that these men conceived the idea of utilizing a small lake known as Leader lake, situated on sections 15 and 17, in township 32, north, range 25 east, W. M., as a reservoir for the storage of the waters of neighboring streams known as Loop Loop, Little Loop Loop and Sweat creeks, and after some preliminary investigation, plans were formed. They decided to proceed with the acquisition of the reservoir site and with the appropriation of the water rights. Barker was instructed to procure the reservoir site, and did so by acquiring it from the owner, Mr. Leader, and conveyed it to plaintiff. He was also directed to file a water right notice on Sweat creek, which he did. This is the notice or claim heretofore referred to. After the posting and filing of this claim to the waters of Sweat creek, construction work was commenced early in 1909, and within six months as required by the statute for diversion works, the first actual construction being a ditch from the Leader lake reservoir to Little Loop Loop creek. Work was also commenced on the Leader lake dam for the purpose of converting it into a reservoir, by assembling tools for construction work in February, 1909. As soon as the snow went off and the ground could be worked in April, 1909, excavation was begun. A ditch was dug from Little Loop Loop creek into Leader lake. This dam was built largely by sluicing, the spring flood waters being used for that purpose and for the purpose of conserving labor and expense. The season when this kind of work could be done was short, but the process was economical. It is a conceded fact that Leader lake is situated on sections 15 and 17, township 33 north, range 25 east, W. M., and that the construction of a reservoir thereon would be in conformity with the plan of diversion and storage stated in the notice of December, 1908. The diversion of the water was accom-

plished by the construction of an intake within twenty feet of the point where the notice was posted, a flume and siphon across the Big Loop Loop canyon was constructed, and a flume and ditch was constructed thence to the reservoir. Some water was impounded in the reservoir in 1909, a considerable amount in 1910, and more in 1911. About 330 acres were irrigated in 1911 by means of plaintiff's system. In 1912, 651 acres were irrigated, and in 1913 about 916 acres. In considering the question of diligence on the part of plaintiff, it seems to us that the plan of its operations, as indicated in the original notice filed by Barker in 1908, was diligently pursued.

"What constitutes diligence must be determined on the facts of each case. . . . 'In appropriating unclaimed water on public lands only such acts are necessary, and only such indications and evidences of appropriation are required as the nature of the case and the face of the country will admit of and are under the circumstances and at the time practicable; . . .' Diligence does not require unusual or extraordinary efforts, but only such constancy and steadiness of purpose or of labor as is usual with men engaged in like enterprises. . . . 'Such assiduity in the prosecution of the enterprise as will manifest to the world a *bona fide* intention to complete it within a reasonable time. . . .'" Wiel, Water Rights in the Western States (3d ed.), §383.

"The appropriator must proceed with reasonable diligence to construct and complete such works as are necessary for the immediate application of the water to the intended use. What is a reasonable time and what constitutes reasonable diligence depend largely on the facts of the particular case, . . . but it may be said that they depend chiefly on the physical circumstances of the locality, and the nature and condition of the region to be traversed and its accessibility, the length of the season in which work is practicable, the supply of labor, and the magnitude and difficulty of the works necessary, . . ." 40 Cyc. 711.

See, also, *Kimball v. Gearhart*, 12 Cal. 27; *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, 70 Wash. 442, 126 Pac. 945.

The doctrine of relation, as recognized by Rem. Code, § 6319, protects the rights of the first appropriator from the time that he gives the proper notice to the time of final consummation of the appropriation. It gives him a reasonable time in which to construct the works necessary, and also a reasonable time within which to actually apply all of the water claimed to the use for which the appropriation was made. And, although there may be intervening and subsequent appropriations of the water claimed, the prior appropriator need take no notice of them, as, provided he has used but a reasonable time between the first step and the last one necessary for the consummation of the appropriation, he may then successfully claim all of the water to the full extent of his appropriation. 1 Kinney, Irrigation & Water Rights (2d ed.), §§ 748, 749.

It seems clearly apparent that the scheme of operations contemplated by plaintiff was as outlined in the notice posted and filed by Barker in December, 1908. That scheme was both to divert the water and use it for irrigation, power and domestic purposes, and also to impound the water by storage. It diligently pursued that scheme of operations by diverting the water at the place intended, and as specified in the notice, by beginning the construction of the reservoir indicated in the claim, by acquiring rights of way for its ditches, flumes, and conduits, by constructing its ditches, flumes, and conduits, and by putting the water so acquired to beneficial use. Of all these facts and conditions defendant had actual knowledge and notice before it initiated any claims to the same water. We believe from the evidence, therefore, that plaintiff established all the necessary elements of a valid prior appropriation to the waters appropriated in Sweat creek to the extent of waters diverted and used.

The question then arises, What quantity of water did plaintiff acquire by priority of right? It is shown that plaintiff constructed at its intake a flume of the capacity of 34 cubic feet per second of time, and that this flume is

so constructed that it can be increased to have a carrying
capacity of 44 cubic feet per second of time. Its earth
ditch has a capacity, with three feet of water running in it,
of 75 cubic feet per second of time. The flume from Sweat
creek has a capacity at its intake of 10 cubic feet per second.
It is so constructed that it can be increased if found neces-
sary. Reservoirs constructed by plaintiff are shown to have
a capacity, with the dam at forty feet and the water at
35 feet, of 3,306 acre feet. With the dam at 50 feet and the
water at 45 feet, its capacity is 5,737 acre feet. By taking
the waters of Sweat creek down the Loop Loop creek channel
and out through a ditch known as the Clark ditch, which
plaintiff acquired, from May 1 to June 14, about half the
irrigation season, from 500 to 1,000 acres can be irrigated
and the capacity of the system increased by from 750 to
1,500 acre feet. The total capacity of plaintiff's irrigation
system may, therefore, be said to be about 8,000 acre feet,
or enough to water about 2,600 acres of land with the dam
of its reservoir at a 50-foot level. The testimony shows that
there are 1,523 acres of land under contract with the
plaintiff; that it has applications for 1,480 acres more, and
that there are 3,600 acres additional susceptible of irriga-
tion through plaintiff's system. It was stipulated during
the trial that there were sufficient lands susceptible of irriga-
tion under plaintiff's system to require all the water available
from all the streams, that all this land was dry and arid
requiring artificial irrigation, and that with such irrigation
it would produce good crops. Thus it is shown that there
is not enough water available to fill the plaintiff's system
and satisfy its needs. Plaintiff actually diverted and put
to beneficial use at least eight cubic feet per second of time of
the flow of Sweat creek above its confluence with the main
stream.

Defendant attempts to show an abandonment of the rights
acquired by the plaintiff by the posting and filing of a notice
on Sweat creek of December, 1908, and the work done there-

under, because (a) that plaintiff at one time contemplated construction of two reservoirs to be known as Loop Loop and Golden Rule reservoirs, and intended to store therein certain of the waters of Loop Loop and Sweat creeks, and that no actual construction work has been done on these reservoirs; (b) that a map filed in the land office does not show the location of the flume and pipe line from Sweat creek to the main canal of the plaintiff; (c) that the Loop Loop or main flume of plaintiff is of the same size below as above the point where the Sweat creek pipe line enters into it; (d) that certain sketch maps introduced in evidence, or offered subject to objection by plaintiff, do not show the location of the Sweat creek flume and pipe line.

As to the first contention, the mere fact that plaintiff at one time contemplated the construction of two additional reservoirs, by no means indicates the abandonment of its general scheme for the diversion and storage of the waters as contemplated in its original appropriation. The fact that a map filed in the land office does not show the location of the flume and pipe line from Sweat creek across Loop Loop canyon cannot show an intention to abandon its Sweat creek water rights. That map bears a note indicating the point on Sweat creek where the Barker location was filed. At the time that map was filed in the land office for the purpose of obtaining a right of way through the national forest for canals and flumes, the flume and pipe line had not been definitely located and could not be shown on the map. The fact that the Loop Loop flume, the main canal of plaintiff along the Loop Loop, is of the same size below as above the mouth of the pipe line from Sweat creek is no evidence of abandonment of its general project to appropriate, divert, store, and use the waters of Sweat creek it had claimed in 1908.

Errors are claimed by defendant upon certain proceedings of the court in delaying decision for several months after the ninety-day period required by law, and in refusing to reopen the cause on application of defendant on a showing by affi-

davit and the reception of further evidence. Upon the first matter, no injury or prejudice to defendant occurred; and upon the second, the court exercised its judicial discretion, and no injury or prejudice was shown or appears to have occurred thereby.

Upon the merits of the whole case, the record convinces us that plaintiff is entitled to a decree in its favor adjudicating it to be the owner of the first and prior right to divert, store, and use the waters of Sweat creek to the extent at least of eight cubic feet per second of time, as against defendant, quieting plaintiff's title thereto, forever enjoining defendant from interfering therewith, and allowing to plaintiff its costs.

Reversed on plaintiff's appeal, and affirmed on defendant's appeal. Let decree enter accordingly.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.