(October 30, 1923.)

MYERS COHN, Respondent, v. HANS SORENSON, GEORGE ARMSTRONG and LEM TOLER, Appellants.

[219 Pac. 1059.]

WATER RIGHTS — APPROPRIATION INITIATED ON INDIAN RESERVATION — PRIORITIES—FINDINGS.

    1. Where a settler has entered upon an Indian reservation under a valid claim of right of possession, and has initiated an appropriation of water by the diversion thereof upon a tract of land in the reservation, and has put such water to a beneficial use during the entire period of his occupancy and finally acquires the fee simple title to the land, his right to the use of the water dates from the time when he in good faith diverted and applied it to a beneficial use.

    2. *Held,* that the trial court erred in not making a finding establishing the prior right of the appellants to the use of the excess waters of Gordon or Garden Creek.

---

Publisher's Note.

    1. Right to obtain title to water by appropriation, see note in 3 L. R. A., N. S., 665.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Robert M. Terrell, Judge.

Action to enjoin diversion of irrigation water. Judgment for plaintiff. *Modified.*

Budge & Merrill, for Appellants.

The decision of the court must be given in writing and filed with the clerk within twenty days after the case is submitted for decision. (C. S., sec. 6866; *Idaho Comstock Co. v. Lundstrom,* 9 Ida. 257, 76 Pac. 762; *McGary v. Steele,* 20 Ida. 753, 119 Pac. 448.)

A decree adjudicating water rights cannot fix a date of priority earlier than the opening of the Indian Reservation. (1 Fort Bridger Treaties, Indian Affairs & Treaties, pp. 199, 292, 315, 704; Kenney on Irrigation, secs. 405, 415; *Avery v. Johnson,* 59 Wash. 332, 109 Pac. 1028; *Stofferan v. Okanogan Co.,* 76 Wash. 265, 136 Pac. 484.)

McDougall, McDougall & McDougall, for Respondent.

C. S., sec. 6866, is not mandatory but directory. (*McGary v. Steele,* 20 Ida. 753, 119 Pac. 448; *Idaho Comstock Co. v. Lundstrom,* 9 Ida. 257, 76 Pac. 762.)

Title to water rights cannot be obtained by permissive use and occupation. (*Davis v. Devanney,* 7 Ida. 742, 65 Pac. 500.)

Where a settler on such lands appropriates water for the reclamation thereof and diverts such water to and upon such lands prior to filing or entry on the same, his water rights after entry date from the actual appropriation. (*Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Brown v. Newell,* 12 Ida. 166, 85 Pac. 385; *Bennett v. Nouris,* 22 Ida. 249, 125 Pac. 1038; *Joyce v. Rubin,* 23 Ida. 296, 130 Pac. 793.)

An appropriator cannot be defeated because he did not use the water on lands to which he had a title. (*Mahoney v. Neiswanger,* 6 Ida. 750, 59 Pac. 561.)

A valid water right cannot be initiated by using another's ditch against his will, or by any other trespass. (*Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73.)

The title to the land upon which water is to be used is not a question that can be raised in this case. The ownership of the land is immaterial. The question is, was the water diverted from the stream and put to a beneficial use. (*Sarret v. Hunter,* 32 Ida. 543, 185 Pac. 1072.)

The cross-complaint does not state a cause of action, for it does not state that the waters of Garden Creek had been applied to beneficial use by either of the parties, or that any of the parties are in a position to apply water to beneficial use, or the amount of water necessary to be applied. (*Willis v. Willis,* 33 Ida. 353, 194 Pac. 470; *Ramsey v. District Court,* 33 Ida. 296, 193 Pac. 733.)

EDGINGTON, District Judge.—This is an action instituted by the plaintiff and respondent in the year 1919 for the purpose of enjoining the defendants and appellants from diverting the water of Gordon, also known as Garden Creek, Bannock county, Idaho.

For the purpose of this opinion, and in order to cover an assignment of error, a summary of the entire proceedings will be incorporated herein.

The complaint was filed August 14, 1919, and answer and cross-complaint were filed January 23, 1920. The presentation of the case was commenced June 15, 1920, and at the conclusion of the hearing the case was taken under advisement by the court, and on July 27, 1920, the court issued a memorandum decision relative thereto. Approximately eleven months after the court's memorandum decision was filed, the defendants, by motion, objected to the making and filing of findings and decree upon the ground that the twenty-day period within which the court should make the said findings, as provided by C. S., sec. 6866, had expired, and moved the court to reopen the case and permit the resubmission of evidence. The latter motion the court took under advisement, and later denied, and on October 12, 1921,

the court signed findings of fact, conclusions of law and decree permanently enjoining the defendants.

This appeal is prosecuted from the judgment.

The appellants set forth several alleged errors, the first being that "the court erred in entering findings of fact and conclusions of law and decree after appellants had filed an objection and had moved to reopen the case," and the second specification challenges the legal propriety of the court in denying the appellants' motion to reopen the case.

It is possibly true that the delay between the time of the announcement of the court's decision and the time of the filing of the findings of fact, conclusions of law and decree was somewhat extended. It is not, however, apparent that the appellants suffered any loss or interference with their substantial rights by reason thereof, unless it can be said that they were deprived of the use of the excess waters of Gordon or Garden Creek over and above the amount decreed to the plaintiff and respondent, which excess waters, as we will discuss later on, should have been decreed to the appellants. To reverse the decision at this time, and upon that ground, would serve no useful purpose, as there is no showing made that any newly discovered evidence material to the appellants' case would be adduced, which would fairly indicate upon a new trial a decree in their favor.

It appears from the transcript that the respondent, and his partner, in the early '70's were engaged in the cattle business and, while grazing their cattle in and around the creek in question and the land contiguous thereto, entered a tract of land upon which wild hay was grown. The creek and land involved in this action were at that time embraced within what is commonly known as the Fort Hall Indian reservation. It further appears that the respondent and his partner immediately made arrangements with the Indian agent at Fort Hall whereby they received permission to cut the hay upon the said land. The record further shows that for many years thereafter they did cut the hay upon the said land, paying therefor a valuable consideration. This plan of leasing continued in effect for several years; that

during the year 1876 or thereabouts the respondent constructed a ditch from the said Gordon or Garden Creek and diverted all the waters of the said stream into and upon the said meadow land embraced within the said Indian reservation. The partner of the respondent retired from the firm about 1886 and the respondent purchased from the retiring partner his interests in and to the partnership property.

The record sufficiently establishes the fact that the respondent continued in possession of the same lands under the arrangements hereinbefore mentioned and used the waters of the said creek continuously upon the said lands for beneficial purposes. The record is silent as to any dispute arising questioning the right of the respondent to the use of the said water until the year 1919, at which time one of the appellants went into and upon the ditch so constructed by the respondent and his associates, and cut the same, built dams in the stream and diverted the waters of the said creek to lands belonging to, or occupied by, the appellants. This act prompted the present controversy.

In 1895 the lands occupied by the appellants were placed beyond the jurisdiction of the Fort Hall Indian reservation, that is, they were excluded therefrom, and in the year 1902 an order of exclusion was also made covering the lands occupied by the respondent.

Immediately upon the opening of the reservation both tracts of land went into private ownership, the respondent securing title to the lands occupied by him since the year 1876 and the appellant securing title through a filing made by one Marley. The appellants do not assert any claim to the use of the waters involved in the controversy antedating the year 1886.

The appellants strenuously urge that the respondent was a trespasser in that his claim to the waters of the said creek dated at a time preceding the formal opening of the said Indian reservation and that because of such fact he could not be entitled to priority in the waters of the said creek, and further, that if he claimed such title it could only be from the date such land was excluded from the Indian reser-

vation, i. e., 1902. In support of the appellants' theory in
this regard they cite the case of *Avery v. Johnson,* 59 Wash.
332, 109 Pac. 1028, but on reference thereto it will appear
clear that such case is not analogous to the case at bar.

Art. 15, sec. 3, of the constitution of the state of Idaho
provides: "The right to divert and appropriate the unappro-
priated waters of any natural stream to beneficial use, shall
never be denied."

The article of the constitution, cited *supra,* was adopted
by the electorate subsequent to the initiation of respondent's
claim to the waters of the creek in controversy, and therefore
is not controlling in the instant case, and is only cited as
expressive of the general policy governing the appropriation
of waters since the earliest days of irrigation within this
state.

In the case at bar the respondent was upon the land by
and with the consent of the government, or rather by and
with the consent of the Indian agent of the government. We
must presume, and conclude—no showing having been made
to the contrary—that such Indian agent acted within the
scope of his lawful power and authority. There is no ele-
ment in the record supporting the doctrine of trespass. No
question of his right was ever urged; the government
through its agency accepted the money for the use of the
land each year thereby recognizing a temporary possessory
right in respondent which, in time, ripened into a fee-simple
title in the respondent. Good faith at all times marked the
respondent's course.

Where a settler has entered upon an Indian reservation
under a valid claim of right of possession and has initiated a
water appropriation by the diversion of water upon a tract
thereof and has placed same to a beneficial use during the
entire period of his occupancy and finally acquires the fee-
simple title thereto, the right to the use dates from the time
when he, in good faith, diverted the said water to a bene-
ficial use.

In the Washington case cited, *supra,* the predecessors of
the defendant Johnson, that is, Rice and Crosby, were upon

the reservation under no claim of right, apparently speculators, exercising no lawful purpose, and asserting no physical effort to divert the waters in controversy to a beneficial use.

Now, what a contrast! The respondent, Cohn, dug the ditches, diverted the water in controversy to the land, the use of which no one denied him, and raised crops thereon continuously for the past forty years, and more. His right to the use of the water as between the parties was paramount and unassailable.

Did the court err in failing to find upon the allegations of the cross-complaint?

The finding assigned as error, is as follows: "That the cross-complaint does not state facts sufficient to raise an issue in this case." It is contended by the appellants that this is not a finding of fact at all, but is a mere conclusion of law, and in this respect we are inclined to agree with them.

It is true that the cross-complaint did not state, as clearly as it might have done, a cause of action, but the evidence shows without objection being made thereto as to its admissibility under the pleadings, that a certain portion of the waters of Gordon or Garden Creek have been applied upon the lands of the appellants for some years last past; that the appellants cultivated successfully their lands, and crops peculiar to the climatic conditions of the country, such as, wheat, hay, beets, potatoes and garden truck were raised thereon, through the application thereto of certain of the waters of Gordon or Garden Creek. The evidence is ample that there is an excess of water in the said stream beyond that decreed to the respondent, and therefor we conclude that, in view of the allegations of the cross-complaint, the answer to the original complaint, and the evidence based upon the issues joined and trial had—the vulnerability of the cross-complaint being cured by the evidence adduced— the court erred in not making a finding establishing the priority of the appellants to the use of the excess waters of Gordon or Garden Creek.

The appellants further urge that, "The court erred in making a decree broader in scope than the prayer of the

complaint,'' that is to say, that the trial court awarded general relief in that it established the priority of use to the waters of the creek. This objection is not tenable.

The trial court was fully within its judisdictional rights in determining once and for all the priority of the litigants to the use of the waters as between the parties.

The findings of the court are clearly supported by the evidence except that the date of respondent's priority to the use of the waters in question should be affirmatively established as of a date not later than May 1, 1880.

The duty of the water decreed to respondent was fair, equitable and just.

Further, we conclude that the following corrections shall be made by the trial court in its findings and decree:

That respondent's priority right to the use of the waters of Gordon or Garden Creek to the amount set forth in its decree shall be definitely established as of the year 1880 (the findings and decree in their present form establish only by inference the date of priority as of 1880); that the excess waters shall be decreed to appellants as of a date subsequent to the year 1880 in proper ratio based upon the acreage subject to cultivation and irrigation.

We further conclude that to reverse the cause on the grounds discussed herein, and urged by appellants would be futile, especially in view of the fact that the trial court can so remedy its findings and decree as to do substantial justice between the parties, which is the ultimate purpose of all litigation, and thereby save them further costs and inconvenience.

In all other respects the decree is affirmed.

No costs awarded.

McCarthy, Dunn, William A. Lee and Wm. E. Lee, JJ., concur.